RENDERED: JULY 31, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-1108-ME

L.J.S.                                                                                 APPELLANT

APPEAL FROM MADISON CIRCUIT COURT
v.        HONORABLE KIMBERLY BLAIR WALSON, JUDGE
ACTION NO. 23-AD-00072

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES; A.C.; A.C.; AND
O.W.S., A MINOR CHILD                                          APPELLEES

AND

NO. 2025-CA-1111-ME

L.J.S.                                                                                 APPELLANT

APPEAL FROM MADISON CIRCUIT COURT
v.        HONORABLE KIMBERLY BLAIR WALSON, JUDGE
ACTION NO. 23-AD-00087

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES; A.C.; A.C.; AND
O.W.S., A MINOR CHILD                                          APPELLEES

AND

NO. 2025-CA-1112-ME

L.J.S.                                                                                    APPELLANT

APPEAL FROM MADISON CIRCUIT COURT
v.      HONORABLE KIMBERLY BLAIR WALSON, JUDGE
ACTION NO. 23-AD-00073

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES; A.C.; A.C.; AND
A.D.S., A MINOR CHILD                                                        APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ECKERLE, A. JONES, AND L. JONES, JUDGES.

JONES, A., JUDGE:  This is the second appeal arising from petitions filed by

A.C.C. ("Stepfather") to adopt the three minor children of his wife, A.D.C.

("Mother"), without the consent of the children's biological father, L.J.S.

("Biological Father").  In the first appeal, this Court vacated the Madison Circuit

Court's order terminating Biological Father's parental rights and remanded the

matter for additional findings under Kentucky Revised Statutes ("KRS") 199.502

or, alternatively, KRS 199.500(4). *L.J.S. v. A.C.C.*, No. 2024-CA-1025-ME, 2025 WL 1478522 (Ky. App. May 23, 2025) ("*L.J.S. I*"). On remand, the family court entered additional findings and again concluded that termination of Biological Father's parental rights and adoption by Stepfather were warranted. Biological Father again appeals. Following careful review of the record and the applicable law, we affirm.

## I. BACKGROUND

The relevant factual and procedural history is set forth in detail in *L.J.S. I*. We summarize only those facts necessary to resolve the issues presented in this appeal.

Biological Father and Mother were previously married and have three minor children together: Child 1, born in 2009; Child 2, born in 2014; and Child 3, born in 2016. The parties separated in 2019 after an incident in which Biological Father admittedly placed a canine shock collar around Child 2's neck as a form of discipline. The incident resulted in criminal charges against Biological Father and the initiation of dependency, neglect, and abuse ("DNA") proceedings involving all three children.

As a condition of his bond in the criminal case, Biological Father was prohibited from contacting the children. That prohibition remained in place throughout the criminal proceedings and continued thereafter pending resolution of

the adoption proceedings. Ultimately, a jury acquitted Biological Father of first-degree criminal abuse but convicted him of menacing. In the related DNA case, the family court entered an adjudication order on August 2, 2023, finding that Biological Father had abused or neglected the children. Following entry of the disposition order on September 13, 2023, which established permanency with Mother, Biological Father did not appeal the family court's determination.

Mother subsequently married Stepfather. On October 10, 2023, Stepfather filed petitions to adopt the three children without Biological Father's consent pursuant to KRS Chapter 199. The petitions alleged several statutory grounds for adoption without consent, including abandonment, abuse or emotional harm, failure to provide essential parental care and protection, and failure to provide the necessities of life.

The family court conducted an evidentiary hearing at which Mother, Stepfather, and Biological Father testified. By agreement of the parties, the family court took judicial notice of the criminal and DNA proceedings. At the conclusion of the hearing, the family court entered an order terminating Biological Father's parental rights. Biological Father appealed.

In *L.J.S. I*, this Court concluded that the family court failed to make the findings required by KRS 199.502. Accordingly, we vacated the order and remanded the matter for the family court to make specific findings under KRS

-4-

199.502 or, alternatively, KRS 199.500(4), utilizing the clear and convincing evidence standard.  *L.J.S. I*, 2025 WL 1478522, at *4-5.

On remand, the family court entered an order containing additional findings addressing the statutory requirements for adoption without consent. Specifically, the family court found by clear and convincing evidence that Biological Father had abandoned the children; inflicted or allowed physical injury and emotional harm; failed to provide essential parental care and protection; and that termination of his parental rights and adoption by Stepfather were in the children's best interests.  The family court again granted the petitions for adoption. This appeal followed.

## II.  STANDARD OF REVIEW

"An adoption without the consent of a living biological parent is, in effect, a proceeding to terminate that parent's parental rights." *M.S.S. v. J.E.B.*, 638 S.W.3d 354, 359 (Ky. 2022) (citation omitted).  Because parental rights are a fundamental liberty interest protected by the Fourteenth Amendment, proceedings to terminate those rights must be conducted with the utmost caution.  *Id.* Accordingly, the evidence supporting termination must be clear and convincing. *Id.*; *R.P., Jr. v. T.A.C.*, 469 S.W.3d 425, 427 (Ky. App. 2015).

Our review of a family court's findings of fact in an adoption proceeding is governed by Kentucky Rule of Civil Procedure ("CR") 52.01.  *A.F. v.*

*L.B.*, 572 S.W.3d 64, 69-70 (Ky. App. 2019).  Thus, we will disturb the family court's findings only if they are clearly erroneous.  Findings are not clearly erroneous if supported by substantial evidence.  *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003).  Due regard is given to the family court's opportunity to judge the credibility of the witnesses.  CR 52.01.

### III. ANALYSIS

As we explained in *L.J.S. I*, an adoption without the consent of a biological parent may be granted only if the requirements of KRS Chapter 199 are established by clear and convincing evidence.  *L.J.S. I*, 2025 WL 1478522, at *3-5.  On remand, the family court entered detailed findings under both KRS 199.502 and KRS 199.500(4).  Biological Father contends those findings are unsupported by the evidence.  We disagree.

A family court considering an adoption without consent must determine, among other things, whether one of the statutory grounds set forth in KRS 199.502(1), or alternatively incorporated through KRS 199.500(4), has been established and whether adoption is in the child's best interest.  *A.K.H. v. J.D.C.*, 619 S.W.3d 425, 431 (Ky. App. 2021).  Because the statute is written in the disjunctive, proof of any one statutory ground is sufficient.  Here, the family court found multiple statutory grounds had been established by clear and convincing evidence, including that Biological Father inflicted physical injury or emotional

harm upon the children, failed to provide essential parental care and protection, and abandoned the children. The record supports those findings.

## A. KRS 199.502(1)(b), (c), and (e)

The family court first concluded that Biological Father inflicted or allowed physical injury and emotional harm upon the children. *See* KRS 199.502(1)(b), (c). Contrary to Biological Father's argument, the family court did not rely solely upon the findings entered in the prior DNA proceeding. Rather, after conducting its own evidentiary hearing, it expressly found by clear and convincing evidence that Biological Father neglected the children and inflicted physical injury and emotional harm.

Substantial evidence supports that determination. Biological Father admitted placing a canine shock collar around Child 2's neck as a form of discipline. Although he disputed whether Child 2 actually received an electrical shock, he acknowledged both that placing the collar around the child's neck was wrong and that Child 2 sincerely believed he was shocked. The family court also heard testimony regarding the children's continuing emotional response to the incident. Mother testified that Child 2 remains upset and fearful when the incident is discussed, Child 1 has no desire to have a relationship with Biological Father, and Child 3—who was only two years old when contact ceased—knows only Stepfather as her father. Stepfather similarly testified that discussions concerning

Biological Father cause Child 2 to become anxious and fearful, Child 1 to become protective of his siblings, and Child 3 to mirror those emotions.

The family court was also entitled to consider the related criminal and DNA proceedings. By agreement of the parties, the court took judicial notice of those matters. The evidence established that Biological Father was convicted of menacing arising from the shock-collar incident and that the family court subsequently adjudicated the children abused or neglected. Although the prior adjudication itself was entered under the preponderance-of-the-evidence standard applicable to DNA proceedings, the family court did not simply adopt those findings. Instead, it independently found, based upon the evidence presented at the adoption hearing, that the statutory grounds had been established by clear and convincing evidence. Thus, the concern identified in *L.J.S. I* has been fully addressed.

The evidence likewise supports the family court's finding under KRS 199.502(1)(e) that Biological Father continuously failed to provide essential parental care and protection and that there was no reasonable expectation of improvement. While Biological Father completed his Cabinet case plan, maintained health insurance for the children, and contributed toward certain medical expenses, parental care encompasses considerably more than financial support. For approximately six years, Biological Father has had virtually no role in

the children's daily lives. He acknowledged that he has not participated in their education, medical care, extracurricular activities, or general upbringing. He admitted he has not meaningfully inquired about their health, schooling, or well-being. The family court could reasonably conclude that, notwithstanding Biological Father's completion of case-plan requirements, the parent-child relationship had deteriorated to the point that there was no reasonable expectation of meaningful improvement in parental care or protection.

## B. KRS 199.502(1)(a)

The family court also concluded that Biological Father abandoned the children. Biological Father argues this finding is improper because he was prohibited from contacting the children pursuant to the no-contact order entered during the criminal proceedings.

We acknowledge that the no-contact order significantly limited Biological Father's ability to maintain a traditional parent-child relationship. We likewise recognize that much of the delay in these proceedings resulted from Biological Father's exercise of his constitutional right to a jury trial and circumstances beyond anyone's control, including delays occasioned by the COVID-19 pandemic. Biological Father cannot be penalized for exercising his constitutional rights.

Even so, the family court's abandonment finding is supported by substantial evidence. "[A]bandonment is demonstrated by facts or circumstances that evidence a settled purpose to forgo all parental duties and relinquish all parental claims to the child." *M.S.S.*, 638 S.W.3d at 365-66. Although Biological Father occasionally requested photographs of the children and continued to maintain insurance coverage, he acknowledged that he had not sent gifts, birthday cards, or Christmas cards since December 2021, had not meaningfully inquired about the children's education or health, and had made little effort to communicate through available intermediaries, including counsel or the guardian *ad litem*. Moreover, while the children received Social Security derivative benefits based upon Biological Father's disability, those payments arose by operation of law and did not reflect ongoing parental involvement.

And, while we are mindful that Biological Father's ability to maintain contact with the children was significantly restricted by the no-contact order entered in the criminal case, we would be remiss if we did not point out that the order was entered as a direct consequence of Biological Father's own conduct toward Child 2. While the existence of the order is an important consideration, it does not preclude the family court from considering the totality of Biological Father's conduct in determining whether abandonment occurred. And viewed as a whole, the evidence was sufficient to permit the family court to conclude that

-10-

Biological Father abandoned the children within the meaning of KRS 199.502(1)(a).

## C. Best Interests

Finally, the record amply supports the family court's determination that termination of Biological Father's parental rights and adoption by Stepfather are in the children's best interests.

By the time of the evidentiary hearing, nearly six years had elapsed since Biological Father last had contact with the children. During that time, Stepfather assumed the role of the children's day-to-day parent, providing for their emotional, educational, and financial needs. Mother consented to the adoption. The Cabinet recommended approval of the petitions, and the guardian *ad litem* likewise concluded that termination and adoption were in the children's best interests.

Perhaps most significantly, the evidence demonstrated that the children have firmly established their lives with Mother and Stepfather. Child 2 continues to associate Biological Father with the traumatic events that gave rise to these proceedings. Child 1 expressed no desire to resume a relationship with Biological Father. Child 3 has no meaningful memory of him and views Stepfather as her father. Although the passage of time was influenced, to some degree, by circumstances outside Biological Father's control, the family court appropriately

focused on the children's present circumstances rather than assigning blame for the delay. Based upon this record, we cannot conclude that the family court clearly erred in determining that adoption by Stepfather serves the children's best interests.

### III. CONCLUSION

For the foregoing reasons, the order of the Madison Circuit Court, Family Division, is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Rachel D. Yavelak
Whitney O'Neal
Lexington, Kentucky

BRIEF FOR APPELLEE A.C.C.:

Nanci M. House
Winchester, Kentucky